**Kelsey MAYE, et al., Plaintiffs,**

v.

**SMITH BARNEY INC.,
et al., Defendants.**

**No. 95 Civ. 1878 (CBM).**

United States District Court,
S.D. New York.

Aug. 18, 1995.

---

Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman by Eugene P. Cimini Jr., Randi-Sue Weinberg, Garden City, NY, for plaintiffs.

Orrick, Herrington & Sutcliffe by Stuart H. Bompey, Andrea H. Stempel, New York City, for defendants Smith Barney Inc. & Kenneth Shaw.

Law Offices of Sal Greenman by John E. Lopis, Paterson, NY, for defendant Robert M. Skelton.

### OPINION ON MOTION TO DISMISS COMPLAINT OR TO COMPEL ARBITRATION

MOTLEY, District Judge.

### I. BACKGROUND

Plaintiff Kelsey Maye ("Maye") is a 21 year-old African–American male who resides in Kings County, New York.[1] Maye has been employed by Defendant Smith Barney Inc. since June 1993 and presently holds the position of assistant purchasing agent. Maye's highest level of educational attainment is the General Equivalency Diploma he received from Plainsfield High School in Plainsfield, New Jersey.

Plaintiff Jermarlon Harris ("Harris") is a 21 year old African–American male who resides in Kings County, New York. Harris has been employed by Defendant Smith Barney Inc. since November 1993 and currently holds the position of assistant purchasing agent. Harris's highest level of educational attainment is the General Equivalency Diploma he received in Greenville, North Carolina.

Defendant Smith Barney Inc. ("Smith Barney") is a Delaware corporation with a principal place of business at 1345 Avenue of the Americas in New York City, New York.

---

1. For the purpose of resolving this motion only, Defendants accept the allegations in the Complaint as true. (Mem.Supp.Defs.' Mot. Dismiss or Compel Arbitration at 4 n. 2.)

Defendant Kenneth Shaw ("Shaw") is a white male who resides in the State of New York. At all relevant times, Defendant Shaw was a Vice President of Smith Barney and also was Maye's supervisor.

Defendant Robert M. Skelton ("Skelton") is a white male who resides in the State of New Jersey. At all relevant times, Defendant Skelton was a First Vice President of Smith Barney and also was Defendant Shaw's supervisor.

As a part of the hiring process, on March 1, 1994 and March 29, 1994 respectively, Maye and Harris completed and executed documents entitled "Principles of Employment." (Clark Aff.Ex. A.) In both cases, the respective Plaintiff's signature appears on a line immediately beneath a clause which reads "Understood and agreed." (*Id.*) The first paragraph of the "Principles of Employment" provides in pertinent part as follows:

[Y]ou must observe the policies which we publish from time to time for employees.... These expectations are included in ... "the Primerica/Smith Barney Dispute Resolution Procedure, the Primerica/Smith Barney Arbitration Policy, and the Employee Handbook, all of which are available for your review prior to your acceptance of employment, if your choose to review them. You will be asked to acknowledge receiving copies of the current versions of these with your New Hire paperwork when you begin employment. *Remember—it is your responsibility to read and understand these policies and expectations. If you have any questions, now, or in the future, please ask.*

(*Id.* (emphasis in original))

The fourth paragraph discusses Smith Barney's arbitration policy more specifically:

[Y]ou agree to observe our dispute resolution/arbitration procedures for employee disputes.... These procedures include all employment disputes (including termination of employment) that you might have with Primerica/Smith Barney.* ... [I]n the unusual situation in which [the internal grievance] procedure does not fully resolve an employment related dispute, you and we agree to waive any applicable statute of limitations and to submit the dispute, within one year of the date it arose, to binding arbitration before the arbitration facilities of the New York Stock Exchange, Inc. ("NYSE") in accordance with the arbitration rules of that body then in effect and as supplemented by the Primerica/Smith Barney Arbitration Policy. A detailed description of these procedures is available in the Human Resources department for your review. *Again, it is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions, now or in the future, please ask.*

(*Id.* (emphasis in original)).

Finally, the "Principles of Employment" define employment disputes in part as follows:

These include, but are not limited to, all claims, demands or actions under Title VII of the Civil Rights Act of 1964, Civil Rights Act of 1866, Civil Rights Act of 1991 ... and all amendments to the aforementioned, any other federal, state or local statute or regulation regarding employment discrimination in employment, or the termination of employment, and the common law of any state.

(*Id.*)

The Primerica/Smith Barney Employment Arbitration Policy provides that it is applicable to all persons employed by Smith Barney as of September 1, 1992 and to all Smith Barney employees hired thereafter. (Clark Aff.Ex. B. at 1.) This policy also provides as follows:

The Policy makes arbitration the required and exclusive forum for the resolution of all disputes relating to or arising out of employment or the termination of employment that may arise (and which are not resolved by the internal dispute resolution procedure), including but not limited to claims, demands or actions under Title VII of the Civil Rights Act of 1964 ... and all amendments to the aforementioned and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions

of employment or termination of employment.

(*Id.* at 2.)

During the course of Plaintiffs' employment with Smith Barney, the latter provided all employees with two employee handbooks which set forth, *inter alia,* Smith Barney's policies and procedures for handling employment-related disputes. (Clark Aff. ¶¶ 5–6.) In language that is virtually identical to the above-quoted passage from the Employment Arbitration Policy, both of these handbooks make it absolutely clear that arbitration is the exclusive forum for resolution of all employment disputes with Smith Barney including those arising under Title VII and all amendments thereto, as well as any other applicable federal, state or local statutes, regulations or common law doctrines. (Clark Aff. ¶¶ 5–6, Ex. C, Ex. D.)

In the face of these express policies, Plaintiffs nevertheless have filed the instant action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1994), the Civil Rights Act of 1991, 29 C.F.R. § 1601, *et seq.* (1994) and the New York Executive Law § 290, *et seq.* More specifically, Plaintiff Maye alleges that Defendant Skelton engaged in a course of sexually harassing conduct toward him over a period of years thus violating 42 U.S.C. § 2000e–2(a) and appropriate federal regulations. In a second claim for relief, Maye charges that he or other Smith Barney employees complained to Defendant Shaw regarding Skelton's untoward conduct. Maye contends that Shaw and Smith Barney violated Title VII by failing to advise Maye of company policy on sexual harassment, to take prompt and effective action against Skelton, to properly investigate Maye's complaints, or to restore Maye's rights, benefits and privileges of employment. Plaintiff Harris then alleges parallel claims of sexual harassment against the same Defendants. As a fifth claim, the Plaintiffs together claim that Smith Barney is strictly liable for the sexual harassment to which Plaintiffs claim to have been subjected.

Plaintiffs' sixth claim again charges Defendants with violation of 42 U.S.C. § 2000e–2(a) and appropriate federal regulations, this time in the form of racial discrimination.

Plaintiffs' seventh claim states that the acts of the Defendants, jointly and severally, constitute a pattern and practice of discrimination which violates New York Executive Law § 296(1). Finally, Plaintiff's eighth claim asserts that Defendants Shaw and Smith Barney aided and abetted Defendant Skelton's violation of the New York Executive Law § 290, *et seq.*

On June 23, 1995 Defendants filed a motion for an order dismissing the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, compelling arbitration and staying litigation of the claims asserted in the Complaint, and awarding Defendants their attorneys' fees, costs and expenses in connection with the motion.[2] As explained in detail below, Defendants' arguments in support of an order compelling arbitration are persuasive. Since applicable law prevents any examination of the underlying merits of the dispute once it is clear that arbitration must be compelled, Defendants' motion should be granted only insofar as it seeks arbitration.

## II. The Policy Underlying the Federal Arbitration Act.

■ The principal substantive provision of the Federal Arbitration Act ("FAA") is 9 U.S.C. § 2 which states in pertinent part as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save

---

**2.** The motion was originally filed only by Defendants Smith Barney and Shaw. However, on July 6, 1995, Defendant Skelton filed a Notice of Affirmation to Join in Co–Defendant's Motion.

In an attached affidavit, Skelton's counsel stated that his client would adopt all of the legal arguments and factual assertions made in Shaw's and Smith Barney's moving papers. (Lopis Aff. ¶ 7.)

upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1994).

According to the Supreme Court, "[t]he effect of th[is] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The "Principles of Employment" signed by each Plaintiff is clearly a "contract evidencing a transaction involving commerce" as that term is defined by the FAA. As employees in Smith Barney's purchasing department, Plaintiffs' duties encompassed transactions involving interstate commerce. They were required to use and did use various instrumentalities of interstate commerce, including the mail, telephones and various electronic telecommunications systems to receive orders for supplies and then to order supplies from vendors for the various branch offices of Smith Barney which are located throughout the United States. (Clark Aff. ¶ 3.) While 9 U.S.C. § 1 specifically exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce[,]" the Second Circuit has held that this clause applies "only to those actually in the transportation industry." *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972). *See also DiCrisci v. Lyndon Guaranty Bank,* 807 F.Supp. 947, 952–53 (W.D.N.Y.1992). *But see Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991) (noting continuing controversy over scope of 9 U.S.C. § 1 exclusion clause but declining to rule because issue not properly before the Court). Thus, Plaintiffs' agreements are governed by the FAA and the Second Circuit's interpretation of that Act.

■ Section 2 of the FAA evinces "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. at 941. Enactment of the FAA was intended "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer,* 500 U.S. at 24, 111 S.Ct. at 1651. The intentions of the parties are paramount "but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Thus, in interpreting a written arbitration agreement, courts must have "a healthy regard for the federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941. *See also O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1277 (S.D.N.Y.1995).

## III. Application of the Federal Arbitration Act.

In pending litigation, a petition by one of the parties to compel arbitration under the FAA is governed by 9 U.S.C. § 3 which provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3 (1994)

■ In addressing a motion to compel arbitration, a court is required to apply a four-pronged test:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case

are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987). This test does not allow for any exercise of discretion by the trial court. Rather, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). *See also McMahan Sec. Co. v. Forum Capital Markets,* 35 F.3d 82, 85 (2d Cir.1994) ("Under the Federal Arbitration Act . . ., a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). Accordingly, once a court determines that a claim or claims are to be referred to arbitration, the court is prohibited from any consideration of the merits of those claims. *See Gateson v. ASLK–Bank, N.V./CGER–Banque S.A.,* No. 94 Civ. 5849 (RPP), 1995 WL 387720, at *6 (S.D.N.Y. June 29, 1995) (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986)). As discussed below, Defendants have established that there is a written arbitration agreement between the parties that governs all of the claims in the present action. Thus, Defendants' request for an order compelling arbitration must be granted.

### A. Whether the Parties Agreed to Arbitrate.

■ In its most recent pronouncement on the issue, the Supreme Court held that in the absence of an express agreement by the parties to the contrary, the question of whether the parties agreed to arbitrate a dispute is one for the courts to resolve. *See First*

*Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, —— – ——, 115 S.Ct. 1920, 1922, 1923–24, 131 L.Ed.2d 985 (1995). This conclusion "flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Id.* at ——, 115 S.Ct. at 1924. *See also AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625–26, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).[3]

■ In the instant matter, both Plaintiffs have signed "Principles of Employment" which expressly and unambiguously obligate them to comply with the Primerica/Smith Barney Employment Arbitration Policy. Plaintiffs do not, and indeed cannot, dispute this fact. However, they argue that in signing these documents they did not knowingly agree to submit employment disputes to arbitration. In nearly identical affidavits, Maye and Harris contend that when they joined Smith Barney they each were required to attend an orientation session that lasted over two hours during which they were confined to a conference room with twenty-eight other new employees and four Smith Barney employees who acted as overseers. (Maye Aff. ¶ 4; Harris Aff. ¶ 4.) During their respective meetings, both Plaintiffs state that they were told to sign their names approximately seventy-five times on a variety of documents without anyone explaining the contents of said documents and without an adequate opportunity to read most of them. (Maye Aff. ¶ 5; Harris Aff. ¶ 5.) In particular, there was no mention of any arbitration clause and said clause was not even pointed out to the Plaintiffs after they signed their documents. (Maye Aff. ¶ 6; Harris Aff. ¶ 6.) Indeed,

---

**3.** In some of its previous decisions, the Supreme Court held that a party's allegation that there had been fraud in the inducement of the entire contract, although the alleged fraud did not go to the arbitration clause in particular, was itself an issue to be resolved by the arbitrator. *See, e.g., Southland Corp. v. Keating,* 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.,* 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). It is somewhat unclear whether this rule is of continuing vitality in light of the holding in *First Options* that the question of whether the parties ever made an agreement to arbitrate is generally to be decided by the courts.

Maye and Harris both contend that is was not until they consulted with their attorneys in the present litigation that they even learned the meaning of the word "arbitration." (Maye Aff. ¶ 6; Harris Aff. ¶ 6.) Finally, both Plaintiffs complain that the atmosphere during their respective meetings "was intimidating, hurried and tense." (Maye Aff. ¶ 5; Harris Aff. ¶ 5.)

In support of their position, Plaintiffs rely principally on the decision by the Ninth Circuit in *Prudential Insurance Co. v. Lai*, 42 F.3d 1299 (9th Cir.1994).[4] As a preliminary matter, a decision of the Ninth Circuit is not binding on this court. Moreover, the *Lai* case is distinguishable from the instant one. In *Lai*, the court analyzed a provision of the Civil Rights Act of 1991 which states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title...." § 118 of Pub.L. 102–166, set forth in the notes following 42 U.S.C. § 1981 (1994). Despite this seemingly express Congressional endorsement of arbitration of Title VII claims, the Ninth Circuit, relying on a passage from a single committee report from the House of Representatives and a statement by Senator Robert Dole, held that Congress intended that Title VII claims could be arbitrated "only when such a procedure was knowingly accepted." *Lai*, 42 F.3d at 1305. Turning to the agreements in dispute, the so-called U–4 forms required for many professionals in the securities industry, the court held that since these forms did not describe the types of disputes that were to be subject to arbitration they could not constitute knowing acceptance of arbitration for Title VII claims. *Id.* Likewise, the arbitration agreements that

the *Lai* plaintiffs signed with the National Association of Securities Dealers ("NASD") were insufficient because the arbitration clause in the NASD Manual did not refer to employment disputes. *Id.*

The reasoning of *Lai* has been criticized by courts in this and other Circuits as contrary to Supreme Court precedent and as based on citation of inadequate legislative history. *See Hall v. MetLife Resources*, No. 94 Civ. 0358 (JFK), 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995); *Lockhart v. A.G. Edwards & Sons*, No. CIV.A. 93–2418–GTV, 1994 WL 34870, at *3–4 (D.Kan. Jan. 25, 1994). Furthermore, the agreements that Maye and Harris signed could not have done more to put them on notice that they were agreeing to submit any and all Title VII claims to arbitration. The "Principles of Employment" specifically references the Primerica/Smith Barney Arbitration Policy and the Employee Handbook and follows this with an underlined passage reminding the employee that he or she is responsible for reading and understanding these documents among others. Further down on the same one-page document is a more detailed explanation of the arbitration procedures and another underlined reminder that employees are responsible for reading and understanding the procedures. Finally, at the bottom of the document there is a paragraph that expressly defines the employment disputes that are to be submitted to arbitration as including those arising under Title VII and related federal and state laws. A more stark contrast to the facts in *Lai* cannot be imagined.

▮▮▮ Turning to the merits of Plaintiffs' argument about the facts surrounding their signing of the "Principles of Employment", since this goes to the existence of the arbitration agreement, the court must "apply ordinary state-law principles that govern the

---

4. Plaintiffs also cite *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, the Supreme Court has explained that the holding in *Gardner–Denver* that a discharged employee whose grievance had been arbitrated pursuant to an arbitration clause in a collective-bargaining agreement ("CBA") was not precluded from subsequently filing suit under Title VII rested on the critical fact that an employee's contractual rights under a CBA are distinct from the employee's statutory rights under

Title VII. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33–34, 111 S.Ct. 1647, 1656, 114 L.Ed.2d 26 (1991). Moreover, *Gardner–Denver* was also driven by a concern that an employee's individual interests not be subordinated to the collective interests of all of the employees governed by a CBA. *Gilmer*, 500 U.S. at 34, 111 S.Ct. at 1656. Since the present case does not concern a CBA, reliance on *Gardner–Denver* is inapposite.

formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* — U.S. —, —, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Under New York law, one "who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them...." *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 125 N.E. 814, 816 (1920). *See also Imero Fiorentino Associates, Inc. v. Green,* 85 A.D.2d 419, 447 N.Y.S.2d 942, 944 (1982); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987). Especially in view of the fact that each Plaintiff's signature is immediately preceded by the typed clause "Understood and agreed," any argument by Maye and Harris that they did not knowingly agree to submit all Title VII and related civil rights claims to arbitration must be for naught. Plaintiffs' descriptions of their orientation sessions do not constitute allegations of fraud. Moreover, even if Plaintiffs were hurried through these sessions, the "Principles of Employment" obligated them to read Smith Barney's arbitration policy and they certainly could have done so after their orientations. (*See also* Sendak Aff. ¶¶ 2–4 (statement of Smith Barney executive responsible for coordinating orientations to effect that at these sessions new employees were given ample time to read documents before signing them, were repeatedly encouraged to ask questions, and were not intimidated or rushed)). Giving the required healthy regard to the strong federal policy favoring arbitration, an argument such as the one made by Plaintiffs that one did not have time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge. Thus, the court concludes that the parties agreed to arbitrate Title VII and related civil rights disputes.

B. The Scope of the Arbitration Agreement.

■ The "Principles of Employment," the Primerica/Smith Barney Employment Arbitration Policy, and the two Employee Handbooks issued to Maye and Harris all employ similar language to describe the types of dispute that are covered by Plaintiffs' arbitration agreements with Smith Barney. According to these documents, the scope of the arbitration agreements extends to cover, *inter alia,* all claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and all amendments to the aforementioned, any other federal, state or local statute or regulation regarding employment discrimination, conditions of employment or the termination of employment and the common law of any state. (Clark Aff.Ex. A, Ex. B at 2, Ex. C., Ex. D.) Thus, all of Plaintiffs' disputes with Smith Barney are within the scope of their arbitration agreements.

■ Plaintiffs' disputes with the individual Defendants are also within the scope of their agreements to arbitrate. These agreements compel Plaintiffs to follow the arbitration rules of the New York Stock Exchange ("NYSE"). (Clark Aff.Ex. A, Ex. B at 2–3, Ex. D.) Rule 600 of the NYSE provides in pertinent part as follows:

> Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc.

*New York Stock Exchange Guide* (CCH) ¶ 2600 (1993). Smith Barney is a member organization. (Clark Aff. ¶ 2.) As officers of Smith Barney, Defendants Shaw and Skelton are associated persons of a member organization. *See Fleck v. E.F. Hutton Group, Inc,* 891 F.2d 1047, 1054 (2d Cir.1989) (noting that under Rule 600 "associated person" includes, *inter alia,* officers, directors, and branch managers of member organizations). *Cf. Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 451 (S.D.N.Y.1985) (claims against officer of brokerage firm held arbitrable even though only the firm, and not the officer, was party to arbitration agreement). Plaintiffs are non-members and their dispute with Shaw and Skelton arises in connection with

Defendants' activities as associated persons. Therefore, the scope of Plaintiffs' arbitration agreements includes their claims against the individual Defendants as well as those against Smith Barney.

### C. Whether Congress Intended Any of Plaintiffs' Claims to be Nonarbitrable.

■ It is well-settled that federal statutory claims, including discrimination claims, are arbitrable under the FAA. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 35, 111 S.Ct. 1647, 1652, 1656–57, 114 L.Ed.2d 26 (1991) (holding discrimination claims under Age Discrimination in Employment Act arbitrable). "Having made the bargain to arbitrate, [a] party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985). Thus, the burden is on the party who asserts that Congress intended to preclude arbitration of claims under a given statute to demonstrate such intent with evidence from either the statute or its legislative history or an inherent inconsistency between compulsory arbitration and the statute's underlying framework and purposes. *Gilmer*, 500 U.S. at 26–27, 111 S.Ct. at 1652. *See also Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 119 (2d Cir.), *cert. denied*, 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991); *McNulty v. Prudential–Bache Sec.*, 871 F.Supp. 567, 569 (E.D.N.Y.1994).

■ Plaintiffs' only effort with regard to legislative history is to cite the same sources that the Ninth Circuit relied upon in *Lai*. As discussed above, the two statements cited in that case are insufficient to contradict the seemingly unambiguous Congressional endorsement of arbitration in § 118 of the Civil Rights Act of 1991. Concerning any inherent inconsistency between compelled arbitration and the underlying framework and purposes of Title VII, Plaintiffs' only assertion is that as unsophisticated entry level employees they would be at an unfair disadvantage in arbitration before the NYSE, a body in which Smith Barney wields great power as a member organization. However, in rejecting the same sort of prospective claim of bias by NYSE arbitration panels in the context of a suit under the Age Discrimination in Employment Act, the Supreme Court explained that the NYSE arbitration rules provide a panoply of protections against biased panels. *Gilmer*, 500 U.S. at 30, 111 S.Ct. at 1654. Furthermore, FAA itself allows a District Court to vacate an arbitration award "[w]here there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2) (1994). Thus, Plaintiffs have failed to establish any Congressional intent to preclude arbitration of Title VII claims. *Cf. Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. at 3354–55 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.").

Quite aside from the frailty of Plaintiffs' arguments, it is well established by courts in the Second Circuit that Title VII claims are arbitrable. *See, e.g., Gateson v. ASLK–Bank, N.V./CGER–Banque S.A.*, No. 94 Civ. 5849 (RPP), 1995 WL 387720 (S.D.N.Y. June 29, 1995) (holding Title VII claims of discrimination based on sex, age and national origin arbitrable); *Hall v. MetLife Resources*, No. 94 Civ. 0358 (JFK), 1995 WL 258061, at *3 (S.D.N.Y. May 3, 1995) (holding Title VII claims of discrimination based on gender and/or race arbitrable); *Moore v. Interacciones Global, Inc.*, No. 94 Civ. 4789 (RWS), 1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) (holding Title VII claims of discrimination based on sex arbitrable); *Scher v. Equitable Life Assurance Soc'y*, 866 F.Supp. 776, 778 (S.D.N.Y.1994) (holding Title VII claims of discrimination based on religion arbitrable); *DiCrisci v. Lyndon Guaranty Bank*, 807 F.Supp. 947, 951–52 (W.D.N.Y.1992) (holding Title VII claims of discrimination based on sex arbitrable); *Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 89 Civ. 3749 (MJL), 1992 WL 245506, at *6–7 (S.D.N.Y. Sept. 14, 1992) (holding Title VII claims of discrimination based on race arbitrable). Courts in other Circuits have reached the same conclusion. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992); *Willis v. Dean*

*Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991). Similarly, the Court of Appeals of New York State has held that discrimination claims under New York Executive Law § 290, *et seq.,* are arbitrable. *See Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 691, 619 N.E.2d 998, 1003, *cert. denied,* —— U.S. ——, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993).

Thus, Defendants have demonstrated that all of Plaintiffs' claims in the instant matter are arbitrable and the motion to compel arbitration must therefore be granted and the action stayed pending arbitration.

## CONCLUSION

For all of the above reasons, Defendants' motion to compel arbitration is granted and the action stayed pending arbitration.