Brian BERGER, Plaintiff,

v.

## CANTOR FITZGERALD SECURITIES and Prudential Securities, Inc., Defendants.

No. 96 Civ. 2836 (SAS).

United States District Court, S.D. New York.

Nov. 1, 1996.

Steven Arenson, Arenson, Dittmar & Karban, New York City, for Plaintiff Brian Berger.

Tracy J. Abatemarco, Alan Kaminsky, Wilson, Elser, Moskowitz, Edelman & Dicker,

New York City, for Defendant Cantor Fitzgerald securities.

Vincent Alfieri, Lisa E. Gross, Robinson Silverman Pearce Aronsohn & Berman LLP, New York City, for Defendant Prudential Securities, Inc.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On April 18, 1996, Plaintiff Brian Berger filed claims against Defendants Cantor Fitzgerald Securities (Cantor) and Prudential Securities, Inc. (Prudential) under the Americans with Disabilities Act, 42 U.S.C. § 12112 (1996); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (1996); Section 1985 of the Civil Rights Act, 42 U.S.C. § 1985(3) (1996); the New York State Human Rights Law, N.Y.Exec.Law §§ 296(1)(a), 296(6) and 296(7) (McKinney 1996) and the New York City Human Rights Law, Admin.Code of City of N.Y. §§ 8–107–1(a), 8–107–6, 8–107–7 and 8–502(a). On September 20, 1996, Defendants moved to compel arbitration of Plaintiff's claims, pursuant to Sections 2–4 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2–4. For the reasons set forth below, the motions of both Defendants are denied pending discovery on Plaintiff's claim that the agreement to arbitrate was obtained as a result of misrepresentation, high pressure tactics and unfair dealing.

## I. Background

Cantor is a government securities broker-dealer whose principal place of business is One World Trade Center, New York, New York. See Plaintiff's Complaint, dated April 12, 1996, "Complaint" at ¶ 3. Prudential is a securities broker-dealer whose principal place of business is 199 Water Street, New York, New York. See id. at ¶ 4. Both Defendants are and were members of the National Association of Securities Dealers (NASD) during the events underlying this proceeding. See Affidavit of Tracy J. Abatemarco, Attorney for Defendant Cantor, dated August 5, 1996, "Abatemarco Aff." at ¶ 8; Affidavit of Vincent Alfieri, Attorney for Defendant Prudential, dated August 5, 1996, "Alfieri Aff." at ¶ 5; Affidavit of David T. Weiss, Deputy General Counsel, Director of Compliance, and a Vice President of Defendant Cantor, dated September 19, 1996, "Weiss Aff." at ¶ 3. Berger is a citizen of the State of New York. See Complaint at ¶ 2.

According to the allegations in the Complaint, Cantor hired Berger as a clerk in October, 1991. Cantor promoted Berger to the position of typist or assistant broker in November, 1993. In January, 1994, Cantor designated Berger as the assistant to Michelle Digiaro, a Cantor broker. During the time that Berger served as Digiaro's assistant, Digiaro allegedly sold $100,000,000 to $300,000,000 worth of securities per day to Prudential. She dealt with a Prudential employee named Scott Graham. See Complaint at ¶¶ 5–8, 11–12.

At approximately 4:15 p.m. on September 8, 1994, Digiaro and two other Cantor brokers, Annie Cassisa and Tom Sylvester, allegedly entered into a conversation with Graham. See Complaint at ¶ 14. In the course of this conversation, which occurred during business hours and at the offices of both Cantor and Prudential, the above Cantor and Prudential brokers accused Berger of (1) "having AIDS"; (2) "having a deadly disease"; (3) "coughing all day"; (4) "handling their food while having AIDS"; (5) "being a faggot"; (6) "being a homosexual"; (7) "bringing girls to the office as a cover" and (8) "giving blow jobs" ("the Statements"). See id. at ¶¶ 15–16. Prudential, through Graham, directed Cantor, through Digiaro, Cassisa and Sylvester, to "fire the faggot." See id. at ¶ 17. Berger heard the Statements, which he asserts were and are all false, see id. at ¶¶ 32, 70, 72; Affidavit of Brian Berger, dated September 9, 1996, "Berger Aff." at ¶ 5, and "was overwhelmed and devastated." See Complaint at ¶ 18.

Plaintiff also alleges that when he complained about the Statements to Frank Pezzuti, a Senior Managing Director at Cantor and the head of all of its trading rooms, Digiaro, Graham, and unnamed Cantor employees branded Berger a "snitch" and a "rat" and "proceeded to turn virtually the entire trading floor on which Plaintiff worked against him." See Complaint at ¶¶ 19, 21–22.

As a result, Berger was isolated and shunned by Cantor and its employees. *See id.* at ¶ 23.

Cantor terminated Berger on March 10, 1995, for "lateness" and "poor performance." *See* Complaint at ¶¶ 25–26. Plaintiff alleges that these reasons were mere pretexts for his "discriminatory and malicious" termination by Defendants Cantor and Prudential. *See id.* at ¶ 27.

In support of their motions to compel arbitration, Defendants allege that on November 18, 1993, Plaintiff executed a Uniform Application for Securities Industry Registration or Transfer, known as a "U–4 Form," which contains an arbitration clause providing that disputes arising out of Plaintiff's employment and between Plaintiff and his employer or a customer must be submitted to mandatory arbitration according to the rules of the NASD. *See* Cantor's Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Proceedings, "Cantor Memo." at 3–4; Prudential's Memorandum of Law in Support of its Motion to Compel Arbitration, "Prudential Memo." at 2.

In opposition to Defendants' motions, Berger claims that he did not agree to the arbitration clause in the U–4 Form. *See* Berger Aff. at ¶¶ 3–4; Plaintiff's Memorandum of Law in Opposition to Defendant's Motions to Compel Arbitration, "Plaintiff's Memo. in Opposition" at 1–2. Berger asserts that he was told only to fill out an "application to become a registered government securities broker," Berger Aff. at ¶¶ 3, 26, that he "was given no more than five minutes to do so," *id.* at ¶ 3, that Cantor "[n]ever mentioned the word arbitration," *id.* at ¶ 3, and that an unnamed woman in Cantor's Compliance Department simply instructed him "to put [his] social security number at the top of each page, ... to fill in the necessary information and sign at the bottom of the last page." *Id.* at ¶ 27. Plaintiff also asserts that Cantor never provided him with a copy of the NASD Manual sections necessary for Plaintiff to understand the content and scope of the arbitration clause. *See id.* at ¶¶ 44–47; Plaintiff's Memo. in Opposition at 23–25. Plaintiff thus concludes that any agreement to arbitrate was the involuntary result of misrepresentation, high pressure tactics, and unfair dealing. *See* Berger Aff. at ¶ 4.

## II. Discussion

Relying on his allegation that Cantor induced him to sign the U–4 Form through misrepresentation, high pressure tactics, and unfair dealing, Plaintiff argues that the arbitration clause in the U–4 agreement should not be enforced. As a result, Plaintiff seeks to assert his claim in this Court.

### A. The Court Must Decide Arbitrability

Historically, allegations that an arbitration clause alone had been fraudulently procured, or was otherwise unenforceable, were decided by the courts. By contrast, an allegation that the entire contract was unenforceable was submitted to the arbitrator, given a sufficiently broad arbitration clause and absent a separate argument that the arbitration clause itself was unenforceable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967).

Last year, however, the Supreme Court held that unless the contract itself specifies otherwise, the courts rather than the arbitrator must decide whether the parties agreed to arbitrate an issue. *See First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, —— – ——, 115 S.Ct. 1920, 1923–24, 131 L.Ed.2d 985 (1995). The Court's holding "suggests that the related and antecedent issue of whether an agreement to arbitrate is a contract of adhesion, fraudulently induced, or otherwise revocable, is an issue for the court as well, because essential to the *First Options* inquiry is the assumption that an agreement to arbitrate was made voluntarily." *Aviall, Inc. v. Ryder System, Inc.*, 913 F.Supp. 826, 831 (S.D.N.Y.1996) (Mukasey, J.); *see also Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 106 n. 3 (S.D.N.Y.1995) (noting that the *Prima Paint* approach might not survive *First Options*) In light of the Supreme Court's ruling in *First Options*, counsel for all three parties agreed at oral argument that Plaintiff's allegations that the arbitration agreement is unenforceable should be evaluated by this Court rather than the arbitrator.

## B. Discovery Needed to Decide Whether An Agreement to Arbitrate Was Made

Both Defendants argue that under the authority of *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845 (2d Cir.1987), Berger's signature on the U–4 Form alone binds him to the provisions of its arbitration clause. However, *Genesco* specifically noted that there is an exception to this general contract principle if a plaintiff "can show special circumstances that would relieve him of such an obligation." 815 F.2d at 845. *See also* 9 U.S.C. § 2 (arbitration agreements are enforceable "save upon such grounds as exist in law or in equity for the revocation of any contract"); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ("courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract' "), *both quoted in Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991).

Again relying on *Genesco,* 815 F.2d at 846, Prudential argues that widespread industry use of arbitration clauses puts a contracting party on notice that an agreement probably contains an arbitration clause. The Second Circuit effectively qualified that language in *Genesco,* however, by relying on the district court's finding that the plaintiff "was an experienced textile concern with economic power equal to that of [the defendant]." *Id.* In the present case, Defendants have alleged neither that Berger was an experienced commercial actor at the time he signed the U–4 Form, nor that he had economic power approaching that of Cantor.

Discovery is needed before Defendants' motions may be decided, as it should help to clarify several disputed issues of fact that may or may not give rise to special circumstances rendering the U–4 arbitration agreement unenforceable. For example, Plaintiff claims: (1) that an unnamed woman in Cantor's Compliance Department told him that the U–4 Form was an application to take the Series 63 test to become an NASD registered broker, and that this Compliance employee said nothing more about the content of the form; (2) that he was given no more than five minutes to fill out the U–4 Form, which is disputed by Cantor in its Reply Memorandum of Law, "Cantor Reply" at 2; and (3) that he was never given a copy of the NASD Manual referred to in the U–4 agreement. Given the Supreme Court's statement in *Gilmer* that claims of special circumstances such as coercion, fraud, or unequal bargaining power are "best left for resolution in specific cases," 500 U.S. at 33, 111 S.Ct. at 1656, further development of the factual record is warranted.

Defendants call the Court's attention to three recent cases in this District in which courts resolved motions to compel arbitration without recourse to discovery. The first of these cases, *Hall v. Metlife Resources,* No. 94 Civ. 0358 (JFK), 1995 WL 258061 (S.D.N.Y. May 3, 1995), also involved an arbitration clause contained in a U–4 Form. In *Hall,* however, the plaintiffs did not allege that they had been induced to sign the U–4 Form through fraud, misrepresentation or unfair dealing. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Compel Arbitration, "*Hall* Plaintiffs' Memo." The *Hall* plaintiffs did allege that they were never given a copy of the NASD rules. *Id.* at 4. However, the *Hall* opinion did not address this issue, *see* 1995 WL 258061, and therefore has no precedential value on the issue of whether an agreement to arbitrate should be upheld in the circumstances alleged in this complaint. The *Hall* court only considered the *Hall* plaintiffs' allegation that the defendants had not informed them of an October 1993 amendment to the NASD Code. *See* 1995 WL 258061, at *2.[1] In addition, the *Hall* plaintiffs were all at the managerial level and had signed U–4 Forms on multiple occasions. *See id.* at *2–3. Berger both was less experienced and claims that his agree-

---

1. In compelling arbitration, the *Hall* court agreed with Judge Leisure's opinion, in *O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1278 (S.D.N.Y.1995), that the amendment was "not a change to the NASD Code but rather was a clarification of an existing ambiguity." *Hall,* 1995 WL 258061, at *4.

ment was obtained through fraud and misrepresentation.

The second and third cases cited by Defendants, *Maye v. Smith Barney, Inc.*, 897 F.Supp. 100 (S.D.N.Y.1995), and *DeGaetano v. Smith Barney, Inc.*, No. 95 Civ. 1613 (DLC), 1996 WL 44226 (S.D.N.Y. Feb. 5, 1996), did not involve U–4 Forms. In finding that the parties agreed to arbitrate, the *Maye* and *DeGaetano* courts stressed the fact that the arbitration agreements signed by plaintiffs in both cases expressly defined the types of employment disputes subject to arbitration. *See Maye*, 897 F.Supp. 100, 107 (the one-page document contains a "detailed explanation of the arbitration procedures and ... at the bottom of the document there is a paragraph that expressly defines the employment disputes that are to be submitted to arbitration"); *DeGaetano*, 1996 WL 44226, at *7 ("[a]t the bottom of the one-page Agreement, there is a paragraph that expressly defines the employment disputes that are subject to the Agreement's arbitration procedures."). *Maye* states "the agreements that Maye and Harris signed could not have done more to put them on notice that they were agreeing to submit any and all Title VII claims to arbitration," 897 F.Supp. at 107, and contrasts those agreements with the U–4 Form at issue in a Ninth Circuit case cited by the *Maye* plaintiffs, *Prudential Ins. Co. v. Lai*, 42 F.3d 1299 (9th Cir.1994), noting that a "more stark contrast to the facts in *Lai* cannot be imagined." *Maye*, 897 F.Supp. at 107.[2]

Berger alleges, also in contrast to the facts in *Maye* and *DeGaetano*, that Cantor's failure to provide him with a copy of the NASD Manual deprived him of notice of the types of disputes covered under the U–4 arbitration clause. *See Hoffman v. Kamhi, Inc.*, 927 F.Supp. 640, 644 (S.D.N.Y.1996) ("[i]n this District, those judges who have had the opportunity to confront this issue have ordered arbitration where language in the arbitration agreement placed the employee plaintiff on notice that he or she was waiving his or her right to bring employment discrimination claims in the federal courts") (citing *Maye*, 897 F.Supp. at 107; *DeGaetano*, 1996 WL 44226, at *5, and contrasting *Hall*, 1995 WL 258061, at *3–4). Here, there is no such notice contained within the four corners of the arbitration agreement.

The issue of notice is relevant both to the scope of an arbitration agreement, *see Hoffman*, 927 F.Supp. at 644–45, and to the initial question of whether a voluntary agreement to arbitrate has been made, *see Maye*, 897 F.Supp. at 106–08. Plaintiff's request at oral argument to conduct discovery into Cantor's policies and practices regarding distribution of the NASD Manual is a reasonable one.

III. Conclusion

The parties are directed to commence discovery on Plaintiff's claim that he was induced to sign the U–4 Form by misrepresentation, high pressure tactics and unfair dealing on the part of Defendant Cantor. Defendants' motions to compel arbitration and stay these proceedings are denied pending the outcome of discovery. Plaintiff's request for a jury trial on the issue of arbitrability, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, will be considered at the close of discovery. *See, e.g., Rush v. Oppenheimer & Co., Inc.*, 638 F.Supp. 872 (1986) (jury trial ordered on plaintiff's claim that he was fraudulently induced to agree to arbitration).

So Ordered:

---

2. In *Lai*, as in the present case, plaintiffs alleged that when they signed the U–4 Form they were told only that they were applying for a test, that they were simply directed to sign in the relevant place without being given an opportunity to read the forms, that arbitration was never mentioned, and that they were never given a copy of the NASD Manual, which contained the actual terms of the arbitration agreement. 42 F.3d at 1301.