### Charity EMERONYE, Plaintiff,

v.

### CACI INTERNATIONAL, INC., Defendant.

### No. 00cv02263 (ESH).

United States District Court, District of Columbia.

April 17, 2001.

Aaron Martin Nisenson, Henrichsen & Siegel, Washington, DC, for plaintiff.

Ira Michael Shepard, Schmeltzer, Aptaker & Shepard, P.C., Washington, DC, for defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's motion to dismiss, plaintiff's opposition, and defendant's reply. Plaintiff Charity Emeronye filed this suit against her former employer, CACI International, Inc., alleging discrimination under 42 U.S.C. § 1981, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff contends that she was denied promotions because of her race and/or national origin, and that her employer engaged in retaliatory conduct. Defendant moves to dismiss under Fed.R.Civ.P. 12(b)(1), arguing that under plaintiff's employment agreement her discrimination claims are subject to mandatory arbitration and cannot be pursued in this Court. In response, plaintiff argues that: (1) the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA"), does not apply to employment contracts; (2) the employment contract was an adhesion contract that plaintiff did not assent to; (3) the contract here does not contain a clear waiver of statutory rights; and (4) under the FAA, a court can stay a case pending arbitration, but cannot dismiss. The Court finds that the parties' dispute is covered by the Employment Agreement, thus subject to mediation and then binding arbitration, and that this arbitration provision is enforceable. Accordingly, defendant's motion to dismiss and to compel arbitration is granted.

## BACKGROUND

Plaintiff is a Nigerian female with a law degree from the University of London and an L.L.M. degree from DePaul University, majoring in health law. Plaintiff began working for defendant in May 1997 as a "temporary coder." On August 6, 1997, defendant offered plaintiff a permanent position as a paralegal. The offer letter, which was signed by both plaintiff and defendant, requested that plaintiff return a signed copy of the standard "Employee Agreement," which was attached. Def. Reply Ex. A. The offer letter also stated that "[y]our signature on [the Employee Agreement] acknowledges your understanding of the requirements contained therein, and your agreement to abide by them." *Id.* Plaintiff signed the Employee Agreement on August 6, 1997. This two page agreement provides in relevant part that:

> Any controversy or claim arising out of, or relating to this Agreement, or its breach, or otherwise arising out of or relating to my CACI employment (including without limitation to any claim of discrimination whether based on race, color, ... [or] national origin ... or any other legally protected status, and whether based on federal or State law, or otherwise) shall be settled first by resort to mediation by CACI's Ombudsman and then, if mediation fails to resolve the matter, by arbitration. This arbitration shall be held ... in accordance with ... arbitration procedures of the American Arbitration Association. Judgment upon award rendered by the arbitrator shall be binding upon both parties and may be entered and en-

forced in any court of competent jurisdiction.

Def. Mot. Ex. A ¶ 11.

Plaintiff thereafter began work as a paralegal. Plaintiff alleges that in late 1997, her supervisor, a white female, began a course of disparate treatment toward her because of her race (black) and national origin (African/Nigerian). Between March and October 1998, plaintiff applied for several open "senior paralegal" and "supervisory paralegal" positions that she alleges she was qualified for. Plaintiff contends that she was denied these promotions as a result of discrimination, and was retaliated against after filing an EEO complaint with CACI's EEO Office in August 1999. Plaintiff filed this suit against defendant on September 21, 2000, claiming violations of Title VII and 42 U.S.C. § 1981.

## LEGAL ANALYSIS

I. The Federal Arbitration Act Applies to Employment Contracts

█ Plaintiff initially argued that the FAA[1] does not apply to employment contracts, under the exclusion set forth in Section 1, which provides that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are excluded from the Act's coverage. 9 U.S.C. § 1. Plaintiff argued that employment contracts fall within the category of "workers engaged in foreign or interstate commerce" and therefore are not covered by the FAA. Plaintiff concedes, however, that after the present motion was filed, the Supreme Court rejected such a broad in-

---

1. The FAA provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

terpretation of the exclusion in *Circuit City v. Adams,* —— U.S. ——, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), stating that "[w]e now decide that the better interpretation is to construe the statute ... to confine the exemption to transportation workers." *Id.* at 1306. *See also Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1470 (D.C.Cir.1997) ("We hold that section 1 of the FAA does not exclude all contracts of employment that affect commerce."). Therefore, as plaintiff must now admit, her employment agreement is within the scope of the FAA.

## II. The Arbitration Clause is Enforceable

■  Plaintiff also contends that the arbitration clause is not enforceable because 1) the Employee Agreement was a contract of adhesion to which she did not assent, and 2) she cannot waive her statutory rights in the absence of a clear and explicit waiver, which the Agreement did not contain.

Plaintiff argues that there was no agreement to arbitrate because there was no "meeting of the minds" as to the arbitration clause. Plaintiff contends that at the commencement of her employment she was presented with a number of forms to sign, that she does not recall signing the Employee Agreement or having discussions with anyone at CACI about the agreement, does not recall agreeing to arbitration, and does not recall reading the

arbitration policy or having a copy given to her. Emeronye Decl. ¶¶ 3–6.[2] None of these claims renders the arbitration clause unenforceable.

The court in *Maye v. Smith Barney, Inc.,* 897 F.Supp. 100 (S.D.N.Y.1995), rejected similar claims in ruling that the arbitration agreement at issue was enforceable. Plaintiffs in *Maye* alleged that during a two-hour orientation meeting with 28 other new employees they were asked to sign their names to documents approximately 75 times, that no one explained the contents of the documents to them, and that they did not have an adequate opportunity to read most of them. *Id.* at 106. In particular, no one pointed out the arbitration clause in the documents they signed. *Id.* The court found that because applicable state law provided that one who signs a written contract is conclusively presumed to know and assent to its contents, absent fraud or coercion, plaintiffs' signatures were sufficient to render the agreements enforceable. *Id.* at 108.[3] *See also Beauchamp v. Great West Life Assur. Co.,* 918 F.Supp. 1091, 1097 (E.D.Mich. 1996) (upholding arbitration agreement because "[i]t is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence ... [and] estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions") (applying Michigan law) (citation omitted).

*Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *See Bailey v. Fed. Nat'l Mortgage Ass'n,* 209 F.3d 740, 746 (D.C.Cir.2000) ("Under applicable District of Columbia law, '[a]rbitration is predicated upon the consent of the parties to dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contracts between the parties.'") (citation omitted).

---

2.  Plaintiff does not dispute that she in fact did sign the agreement. The "arbitration policy" plaintiff does not recall reading is presumably the "Employee Dispute Resolution" document explaining the CACI arbitration process in more detail than the clause in the agreement. *See* Def. Mot. Ex. B.

3.  The Supreme Court has stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter ... the courts generally ... should apply ordinary state law principles that govern the formation of contracts." *First*

■ Similarly, the arbitration clause in plaintiff's "Employee Agreement" is enforceable under both District of Columbia and Virginia law.[4] In both the District of Columbia and Virginia, a signature on a contract indicates "mutuality of assent" and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation. *See Cole v. Burns Int'l Sec. Servs.*, 1996 U.S. Dist. Lexis 22541 at *5 (D.D.C. January 31, 1996) ("A party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation."), *aff'd*, 105 F.3d 1465 (D.C.Cir.1997); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C.1995) ("Mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement .... "); *Ayers v. Mosby*, 256 Va. 228, 504 S.E.2d 845, 848 (1998) ("In the absence of fraud, duress, or mutual mistake, a person having the capacity to understand a written instrument who reads it, or without reading it or having it read to her, signs it, is bound by her signature"); *First Virginia Bank–Colonial v. Masri*, 245 Va. 461, 428 S.E.2d 903, 904 (1993) ("While [defendant] testified that he did not read the language on the reverse side of the wire transfer agreement, he is nevertheless bound by that language. In the absence of fraud, duress, or mutual mistake, an individual having the capacity to understand a written document, who signs that document without reading it, is bound by his signature."); *Mueller v. Commonwealth*, 15 Va.App. 649, 426 S.E.2d 339,

342 (1993) ("[I]t is hornbook law that one who signs a contract ... will normally be bound by its terms and that ignorance ... of its terms will not ordinarily affect the liability of such person under the contract.") (citations and internal quotations omitted).

Plaintiff has failed to show any special circumstances that would negate her assent to the contract. The offer of employment letter signed by plaintiff states that the Employee Agreement is attached, and that "[y]our signature on these documents acknowledges your understanding of the requirements contained therein, and your agreement to abide by them." Def. Reply Ex. A. The "Employment Agreement" was only two pages long. The fact that plaintiff does not recall signing the agreement, that she had other paperwork to complete, or that the arbitration provision was not explained to her is insufficient to render the contract unenforceable. *See Maye*, 897 F.Supp. at 108 ("Giving the required healthy regard to the strong federal policy favoring arbitration, an argument such as the one made by Plaintiffs that one did not have time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge."); *Johnson v. Hubbard Broadcasting, Inc.*, 940 F.Supp. 1447, 1454–55 (D.Minn.1996) (plaintiff's argument that she did not read the agreement before signing it, that employer did not explain arbitration provision or advise that she consult an attorney, coupled with employer's superior bargaining power was insufficient to render the agreement invalid or an adhesion contract).[5]

---

4. Plaintiff asserts that District of Columbia contract law applies. However, the "Employment Agreement" itself provides that "[t]his Agreement shall be governed by the laws of the Commonwealth of Virginia." Def. Mot. Ex. A ¶ 16. While neither party addresses the applicability of this choice of law provision,

the contract is enforceable under the law of both Virginia and the District of Columbia.

5. Moreover, the fact that plaintiff had a legal education and two law degrees supports that plaintiff should be bound by the terms of the contract she signed. *See Cremin v. Merrill*

■ Plaintiff's argument that the arbitration clause is unenforceable because it does not contain a clear waiver of statutory rights is also unavailing. Plaintiff cites *Bailey v. Federal National Mortgage Ass'n,* for the proposition that "an employee does not waive a statutorily protected right unless the undertaking is 'explicitly stated' and any such 'waiver must be clear and unmistakable.'" 209 F.3d 740, 747 (quoting *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 79–82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998)). The question in *Bailey* was whether an agreement to arbitrate existed between an employer and an existing employee when the employer unilaterally implemented a Dispute Resolution Policy requiring arbitration of job-related claims, but the employee had never indicated that he agreed to the policy or signed any agreement to that effect. The Court found that no meeting of the minds, and therefore no enforceable contract, existed. *Id.* at 118. In its discussion of this issue, the Court noted in a parenthetical citation that in *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 79–82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), the Supreme Court held that a general arbitration clause *in a collective bargaining agreement* does not waive an employee's right to a judicial forum for a claim of employment discrimination unless such a waiver is clear and unmistakable.

■ Here, plaintiff is not waiving any substantive rights but simply subjecting her claims to a different forum. It is "clear" that statutory claims are fully subject to binding arbitration outside of the context of collective bargaining. *Cole,* 105 F.3d at 1478. "[B]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d ·26 (1991) (citations omitted)).[6] *See also Circuit City,* 121 S.Ct. 1302, 1312–13 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited under federal law . . ."). As discussed above, plaintiff's waiver of the judicial forum is valid under applicable contract law and is not subject to any additional requirements. *See, e.g., Haskins v. Prudential Insurance Co.,* 230 F.3d 231, 239, 241 (6th Cir.2000) (rejecting imposition of the requirement that there be a "knowing" agreement to arbitrate, in addition to a valid agreement under applicable state law principles of contract law, and noting that the decision of the Ninth Cir-

*Lynch Pierce Fenner & Smith, Inc.,* 957 F.Supp. 1460, 1477 (N.D.Ill.1997) (holding because "[plaintiff] is well-educated, with an MBA in finance from Northwestern University, and intelligent," and the arbitration clause was conspicuous and clear, "it is fair to apply the elementary rule of contract law that one is presumed to know the contents of a signed agreement.").

6. Under *Gilmer,* arbitration of statutory claims can be required if the following factors are met by the arbitration: (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Id.* at 1482. "Thus, an employee who is made to use arbitration as a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Id.* (citing *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647). Plaintiff has not disputed defendant's argument that the arbitration plan at issue fulfills these requirements.

cuit to impose such a requirement "has been rejected by nearly every court that has had an opportunity to pass on it.") (and cases cited therein)[7]; *Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 183–84 & n. 2 (3d Cir.1998) (whether there is a valid agreement to arbitrate is determined under "ordinary, well established principles of contract law rather than [a] heightened [knowing and voluntary] standard").

III. The FAA Does Not Preclude Dismissal of an Action Pending Arbitration When All Issues Before the Court Are Subject to Arbitration

██ The FAA provides that once arbitration is compelled, the court "shall on application of one of the parties stay the trial of the terms of the agreement, providing that applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. However, a court is not precluded from dismissing a claim after compelling arbitration "in the proper circumstances," including when all issues raised in the complaint must be submitted to arbitration. *Cole,* 1996 U.S. Dist. Lexis 22541 at *12 (citation omitted). *See also Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Sparling v. Hoffman Constr. Co. Inc.,* 864 F.2d 635, 638 (9th Cir.1988) (acknowledging that § 3 gives a court authority to grant a stay pending arbitration "but does not preclude summary judgment when all claims are barred by an arbitration clause"); *Sagal v. First USA Bank,* 69 F.Supp.2d 627, 632 (D.Del. 1999) (stating that courts have interpreted 9 U.S.C. § 3 to permit dismissal "if all

issues raised in an action are arbitrable and must be submitted to arbitration") (citations omitted). Plaintiff does not dispute that all of her claims fall within the *scope* of the agreement, but asks that a stay be entered to allow plaintiff to exercise her post-arbitration appeal rights without having to refile the action. The Courts finds, however, that because all of plaintiffs claims are subject to arbitration, dismissal of this action is within the discretion of the Court and is appropriate.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss and to compel arbitration is granted.

## *ORDER*

It is hereby **ORDERED** that defendant's motion to dismiss and to compel arbitration [7–1, 7–2] is **GRANTED**.

Plaintiff's complaint is dismissed with prejudice.

---

7. The Ninth Circuit case which imposed such a requirement, *Prudential Insurance Co. of America v. Lai,* 42 F.3d 1299 (9th Cir.1994), was not cited by plaintiff. This Court declines to adopt its reasoning.