**Brian BERGER, Plaintiff,**

v.

**CANTOR FITZGERALD SECURITIES,
and Prudential Securities, Inc.,
Defendants.**

**No. 96 Civ. 2836 SAS.**

United States District Court,
S.D. New York.

April 30, 1997.

**92**

Steven Arenson, Arenson, Dittmar & Karban, New York City, for Plaintiff.

Alan Kaminsky, Tracy Abatemarco, Wilson, Elser, Moskowitz, Edelman & Dicker,

New York City, for Defendant Cantor Fitzgerald.

Thomas J. Kavaler, Richard C. Schoenstein, Cahill, Gordon & Reindel, New York City, for Defendant Prudential Securities, Inc.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

On April 18, 1996, plaintiff Brian Berger filed an action alleging claims under the Americans with Disabilities Act, Title VII of the Civil Rights Act, Section 1985 of the Civil Rights Act, the New York State Human Rights Law, and the New York City Human Rights Law.[1] Defendants moved to compel arbitration of these claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2–4. On November 1, 1996, I ruled that plaintiff's allegations of coercion, fraud and unequal bargaining power required further factual development of the record and denied defendants' motions with leave to renew following the required discovery. See *Berger v. Cantor Fitzgerald Securities et al.,* 942 F.Supp. 963, 966 (S.D.N.Y.1996) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1655–56, 114 L.Ed.2d 26 (1991) ("courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract") (quotation omitted)).

Discovery is now complete, and defendants renew their motions to compel arbitration. Furthermore, defendant Prudential Securities, Inc. ("Prudential") now moves for the award of sanctions. For the reasons set forth below, defendants' motions to compel arbitration are now granted. Prudential's motion for sanctions is denied.

### I.   Factual Background

The facts of this case have already been described in *Berger,* 942 F.Supp. at 963–65, and need not be repeated here.

---

1. *See* 42 U.S.C. § 12112 (1996); 42 U.S.C. § 2000e (1996); 42 U.S.C. § 1985(3) (1996); N.Y. Exec. Law §§ 296(1)(a), 296(6) and 296(7) (McKinney 1996); and Admin. Code. of City of New York §§ 8–107–1(a), 8–107–6, 8–107–7 and 8–502(a), respectively.

## II. Applicable Legal Standard

### A. Arbitration Agreements

█ Federal law and policy strongly favors arbitration as an alternative dispute resolution process. *See Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 130 (2d Cir. 1997); *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 480–81, 109 S.Ct. 1917, 1919–20, 104 L.Ed.2d 526 (1989) and *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). The Federal Arbitration Act [2] provides that written arbitration provisions in any contract involving interstate or international commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Consequently, where a court is satisfied that a dispute is arbitrable, it must stay proceedings and order the parties to proceed to an arbitration. *See Progressive Casualty Ins. Co.,* 991 F.2d at 45.

█ In determining the arbitrability of a dispute, a court must first decide "whether the parties agreed to arbitrate, and if so, whether the scope of that agreement encompasses the asserted claims." *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.,* 923 F.2d 245, 249 (2d Cir.), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). As plaintiff denies that he ever agreed to arbitrate disputes with defendants, state law determines whether the parties in fact have agreed to arbitrate. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987). The parties agree that New York law applies in this case.

**2.** *See* 9 U.S.C. §§ 1–16, 201–207, 301–307 (1997).

**3.** The arbitration clause states: "I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrat-

### B. Grounds for Revocation Under New York Law

█ Under New York law, a person who signs a contract is presumed to know its contents and to assent to them. *See Progressive Casualty Ins. Co.,* 991 F.2d at 45; *Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151, 468 N.Y.S.2d 649, 654 (2d Dep't 1983). Plaintiff does not dispute that he willingly signed a U–4 Form containing an arbitration clause [3], but rather argues that the arbitration clause in the U–4 should be revoked because Cantor induced him to sign the form through fraudulent misrepresentations as to the form's content. Plaintiff does not expressly state that Cantor misrepresented the nature of the U–4 Form with the intent to deceive him. Thus, his fraud claim appears to be one of negligent misrepresentation.

█ The elements of negligent misrepresentation are (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did justifiably rely; (4) to their detriment; and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation or duty of care. *See Mallis v. Bankers Trust Co.,* 615 F.2d 68, 81–82 (2d Cir.1980) (Friendly, J.), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Ultramares Corp. v. Touche, Nevin, & Co.,* 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.); *Glanzer v. Shepard,* 233 N.Y. 236, 239–241, 135 N.E. 275 (1922) (Cardozo, J.). New York courts require such a claim to be proven by clear and convincing evidence. *See Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 971 (2d Cir.1987); *Geler v. National Westminster Bank, USA,* 770 F.Supp. 210, 212–13 (S.D.N.Y.1991); *Gordon v. Bialystoker Center and Bikur Cholim, Inc.,* 45 N.Y.2d 692, 412 N.Y.S.2d 593, 595, 385 N.E.2d 285 (1978).

█ Plaintiff also argues that he signed

ed under the rules, constitution, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judg[]ment in any court of competent jurisdiction." Item 10 of plaintiff's form indicated that he was registering for the NASD.

the U–4 Form under duress or coercion.[4] Under New York law, to establish such a claim a plaintiff must show: (1) a threat, (2) which was unlawfully made, and (3) which caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative. *See, e.g., Kamerman v. Steinberg,* 891 F.2d 424, 431 (2d Cir.1989); *Pilanski v. Metropolitan Life Ins. Co.,* No. 95 Civ. 10292, 1996 WL 622024, at *2–*3 (S.D.N.Y. Oct.28, 1996).

## III. Discussion

### A. Plaintiff's Claims of Fraud, Misrepresentation, Duress, and Coercion

The Federal Arbitration Act provides that when a party allegedly in default of an arbitration agreement disputes the existence of any such agreement to arbitrate, that party may proceed to trial on the issue of whether an enforceable arbitration contract was formed between the parties. *See* 9 U.S.C. § 4. A decision on defendants' motion to compel arbitration was suspended because plaintiff's allegations of negligent misrepresentation, coercion and duress would have—if supported by sufficient evidence to create genuine issues of material fact—required a trial on the issue of whether the U–4 arbitration clause was a valid contract under New York law. *See Berger,* 942 F.Supp. at 966.

Discovery has now produced a full record upon which to evaluate plaintiff's allegations. For the reasons that follow I find that plaintiff's factual evidence in support of his allegations of negligent misrepresentation, duress and coercion do not, as a matter of law, provide a basis for the revocation of the arbitration agreement. Therefore, no trial on these issues is required. *See Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1103 (2d Cir.1987) ("A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4."). *See also Doctor's Associates Inc. v. Stuart,* 85 F.3d 975, 980 (2d Cir.1996) ("By this standard, the movant under § 4 would have to provide sufficient evidence in support of its claim such that a reasonable jury could return a verdict for it under applicable laws."). This standard is the same as that employed when a party opposes a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Distajo,* 107 F.3d at 129–30 (citing *Stuart,* 85 F.3d at 983–84).

■ Plaintiff's arguments rest on his allegations that (1) he was told that the U–4 Form was an application to take the Series 63 test to become an NASD registered broker; (2) he was not told that the U–4 Form contained an arbitration agreement; (3) Cantor forced plaintiff to rush while he read the U–4 form and (4) plaintiff was never given a copy of the "NASD Manual" referred to in the U–4 arbitration clause.[5] Plaintiff's argument that he lacked the sophistication required to understand the meaning of the arbitration clause provides the underpinning for all these claims.

As an initial matter, I note that plaintiff is a mentally competent adult, and therefore fully capable of forming a binding contract under New York law. Contract law generally permits adults to freely enter binding agreements even if they are naïve or uneducated, except in those rare cases in which the balance of bargaining power and sophistication is so uneven as to invoke the *doctrine of unconscionability.* This is not such a case. Moreover, plaintiff offers no support for his argument that Cantor bore a special responsibility to explain in full detail the exact significance of the arbitration clause because of plaintiff's youth and inexperience.

---

4. Plaintiff's legal memoranda in opposition to defendants' motions also attack the enforceability of the arbitration clause by arguing that Cantor procured plaintiff's signature on the U–4 Form through "unfair dealing" and "high-pressure tactics". *See, e.g.,* Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motions ("Plaintiff's Supp. Memo") at 7, 33. These claims are subsumed under plaintiff's claim of negligent misrepresentationn and duress, and need not be addressed separately.

5. By "NASD Manual", plaintiff refers to the NASD "rules, constitution, or by-laws". *See* Plaintiff's Supplemental Reply Memorandum, Ex. B.

That plaintiff was informed that the U–4 Form was a registration form for the Series 63 test was, under the circumstances, neither fraudulent nor a material misrepresentation. Five lines above the arbitration clause, the U–4 Form states in bold-faced capital letters: **"THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY"**. Plaintiff admits that he signed and dated the U–4 Form within inches of this line, but claims he never read the warning or the arbitration clause itself. *See* Defendant Cantor Fitzgerald Securities, Inc.'s Affidavit in Support of Motion to Compel Arbitration ("Cantor Aff."), Ex. B at 62–64 (Testimony of Brian Berger, dated February 3, 1997). Plaintiff also admits that he was never told that he could not ask questions about the U–4 Form, and that he chose not to read some parts of the form. *See id.* at 64, 66.

These concessions defeat plaintiff's negligent misrepresentation argument. Even if plaintiff's allegation that Cantor's employees told him the U–4 Form was nothing more than a registration form for the Series 63 exam is accepted as true, plaintiff cannot avoid his legal obligation to read a document carefully before signing it. *See Manufacturers and Traders Trust Co. v. S.W.U. Associates. Inc.*, 105 A.D.2d 1118, 482 N.Y.S.2d 388, 389 (4th Dep't 1984) ("'[i]f the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him'") (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–163, 170 N.E. 530 (1930)). Thus, plaintiff's concessions defeat his allegation that he justifiably relied on defendants' statements or omissions when signing the U–4 Form. Because justifiable reliance is a required element in an action for negligent misrepresentation, *see, e.g., Mallis*, 615 F.2d at 81–82, his negligent misrepresentation claim cannot provide a basis for the revocation of the arbitration agreement.

▉ Finally, plaintiff's own testimony directly contradicts his duress and coercion claims. Plaintiff argues that he was subjected to unyielding pressure to remain on the trading floor at all times, and that he was therefore required to sign the U–4 Form

quickly. Yet it is undisputed that plaintiff's direct supervisor, Frank Pezzuti, allowed plaintiff to leave the trading floor in order to fill out the U–4 Form. *See* Cantor Aff., Ex. B at 48–49 (Berger). Plaintiff also concedes that he had previously left the trading floor for brief periods of time without being subjected to disciplinary action. *See id.* at 89–92. Furthermore, plaintiff did not return to the trading floor directly after signing the U–4 Form. Rather, he engaged in a short conversation with Cantor's Compliance Officer, Sandra Celentano, and performed a tap-dance for her. *See id.* at 67. Plaintiff also admits that he never explained to Ms. Celentano that he was in a hurry, and that he never requested additional time to read the U–4 Form. *See id.* at 70–72.

These circumstances do not rise to the level of duress or coercion required to vacate a contract under New York law. It is an understatement to say that plaintiff's claim that he was under tremendous pressure to remain on the trading floor is seriously undermined by his decision to perform a tap-dance before returning there. But even if accepted as true, plaintiff's factual allegations merely establish that plaintiff was put under time pressure to read and sign a legally binding contract. Yet as plaintiff did not request additional time to read the U–4 Form, there is no evidence to suggest that (1) plaintiff involuntarily signed the U–4 Form without reading it, or that (2) plaintiff had no other options but to sign the U–4 Form without reading it. Without such factual evidence, there is no need to proceed to trial on plaintiff's claims of duress and coercion. *See, e.g., Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 108 (S.D.N.Y.1995) ("Giving the required healthy regard to the strong federal policy favoring arbitration, an argument such as the one made by Plaintiffs that one did not have time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge.").

### B. Plaintiff's Incorporation Argument

▉ Plaintiff now argues the U–4 fails to validly incorporate by reference the NASD arbitration rules because he was never given

a copy of the NASD Manual. Yet plaintiff's own testimony is that he never requested to see the NASD Manual, or any other documents, before signing the U–4 Form. *See* Cantor Aff., Ex. B at 66. In fact, plaintiff asked no questions at all before signing the U–4 Form. This Court has never required that signatories of the U–4 Form be shown the NASD Manual whether they ask to see it or not. To hold that U–4 Forms are invalid unless the referenced "rules, constitution, or by-laws of the organizations indicated in Item 10" are read by the signatory would fly in the face of established precedent.

The Court of Appeals has recently held that "[w]hile a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement." *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir.1996) (citing *Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87, 111 N.E.2d 218 (1953) and *Chiacchia v. National Westminster Bank USA*, 124 A.D.2d 626, 507 N.Y.S.2d 888, 890 (2d Dep't 1986)). The arbitration clause of the U–4 Form clearly states that the plaintiff, by signing the form, agreed to arbitrate any dispute within the scope of the "rules, constitution, or by-laws of the organizations indicated in Item 10"; in turn, Item 10 on plaintiff's U–4 Form clearly identifies the NASD. Despite plaintiff's arguments to the contrary, this reference is clear enough to pass muster under New York law. Additionally, this Court has consistently held that similar language on other U–4 Forms incorporated the NASD arbitration rules by reference into the U–4 Forms. *See O'Donnell v. First Investors Corp.*, 872 F.Supp. 1274, 1277 (S.D.N.Y. 1995); *Moore v. Interacciones Global, Inc.*, 1995 WL 33650, at *5 (S.D.N.Y. Jan.27, 1995); *Pilanski*, 1996 WL 622024 at *2; *Friedman*, 1996 U.S. Dist. LEXIS 19889 at *5; *Hall v. MetLife Resources*, No. 94 Civ. 0358, 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995). I therefore conclude that the arbitration clause validly incorporated the referenced NASD rules.

## C. Defendant Prudential's Motion for Sanctions

Prudential seeks the award of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Although I have decided defendants' motions adversely to plaintiff, given the uncontroverted facts of this case plaintiff's legal contentions were "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). Plaintiff's claims were not presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Finally, it cannot be said that plaintiff or his attorneys unreasonably and vexatiously multiplied the proceedings in this case. Sanctions are therefore not warranted under Rule 11 or 28 U.S.C. § 1927, and Prudential's motion is denied.

## IV. Conclusion

For the foregoing reasons, no grounds exist at law or in equity to revoke the arbitration agreement signed by plaintiff. Defendants' motions to compel arbitration pursuant to 9 U.S.C. § 3 are granted. Prudential's motion for sanctions is denied.

As all of the plaintiff's claims must be submitted to arbitration, no useful purpose will be served by granting a stay of these proceedings. Final judgment is hereby entered dismissing this action and directing the parties to proceed to arbitration. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992); *Alter v. Englander*, 901 F.Supp. 151, 155 (S.D.N.Y.1995); *Hart Enterprises International, Inc. v. Anhui Provincial Import and Export Corp.*, 888 F.Supp. 587, 591 (S.D.N.Y.1995).

Accordingly, the Clerk of the Court is hereby ORDERED to close this case.