Johnson v Chase Manhattan Bank USA (2004 NY Slip Op 50086(U))

[*1]

Johnson v Chase Manhattan Bank USA

2004 NY Slip Op 50086(U)

Decided on February 27, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 27, 2004

Supreme Court, New York County
 ERIC R. JOHNSON, individually and 
 on behalf of all others similarly situated, Plaintiff,
against
CHASE MANHATTAN BANK USA, N.A. and CHASE MANHATTAN CORPORATION k/k/a J.P. MORGAN CHASE & CO., Defendants.
Index No. 603101/02

Herman Cahn, J.
Plaintiff Eric Johnson brings this putative class action on behalf of himself and all other holders of credit cards issued by defendants Chase Manhattan Bank USA, N.A. (Chase USA) and Chase Manhattan Corporation k/k/a J.P. Morgan Chase & Co. (JPMorgan Chase), who received and accepted a promotional offer from Chase USA to borrow money by cash advances or balance transfers subject to a finance charge of an annual percentage rate (APR) substantially below the finance charge that Chase USA usually charged members of the class for purchases made with Chase USA credit cards. Plaintiff alleges that defendants' practice of first allocating payments made, to reduce the amount of the outstanding cash advances, which were subject to the low promotional APR, rather than to reduce the balance generated by purchases, subject to a significantly higher APR, deprived credit cardholders of the full benefit of the promotional rate, thereby rendering the promotion deceptive.[FN1]
Defendants now move: (1) to dismiss the complaint and/or compel arbitration and stay the instant proceedings pursuant to CPLR 3211 (a) (1) and 7503 and Section 1 of the Federal Arbitration Act (FAA); and (2) to dismiss the complaint for failure to state a claim against defendant JPMorgan Chase. Plaintiff cross-moves to stay arbitration of this action.
FACTS
On March 12, 1991, via telephone, plaintiff applied for and received a Chase USA Visa credit card (the Card) (Complaint, ¶ 7; Aff. of Stephen J. Farrell, ¶ 5). In connection with plaintiff's new credit card account, Chase mailed him a copy of the Cardmember Agreement governing the account (Farrell Aff., ¶ 5), which sets forth the terms and conditions associated [*2]with the use of the Card (id.). Plaintiff accepted the terms of the agreement by using the Card.
Pursuant to the agreement, Chase USA can amend any of the terms of its agreement with plaintiff at any time. With respect to amendments, the agreement provides:

We can obtain your consent to any such amendment in one of two ways, as selected by us and disclosed to you with the notice of change of terms. Under one method, you consent to amendment if: 1) after we give notice of the change, you elect to use your Account after the effective date of the amendment; or (2) you agree in writing to the change. Under the other method, you consent to the amendment if: 1) within 30 days after we mail you notice of the change, you do not give us written notice rejecting the change at the address we provide; or 2) you use your Account after 30 days from the date we mail you notice of the change, regardless of whether you give us notice rejecting the change.
Id., Exh 2 at 9.
In 1999, plaintiff was sent a "Change in Terms Notice," effective May 1, 1999, that changed the "Amendments" section of the agreement, by amending the first two sentence of the "Amendments" section to provide:

We may change any of the terms of this Agreement, including without limitation by adding new terms or deleting or modifying existing terms. We will notify you of any such changes as required by law.
Farrell Reply Aff., Exh 2.
Chase USA is a national banking association with its principal place of business in Delaware. Pursuant to the Cardmember Agreement, the laws of the United States of America and the State of Delaware apply to the agreement and to plaintiff's use of the Card (Farrell Aff., Exh 2 at 11).
In July 2000, Chase USA mailed plaintiff a solicitation offering him "the opportunity" to borrow money as a cash advance on his Chase USA Visa credit card at an APR of 5.99%, substantially lower than the usual APR of 16.90% applicable to purchase balances (Complaint, ¶ 24). Plaintiff decided to take advantage of the promotion, and took a cash advance in excess of $5,000 (id., ¶ 29). Chase charged plaintiff a $50 transaction fee finance charge for accepting the promotion, although the promotional materials stated that this transaction fee would be limited to a maximum of $25 (id.).
Plaintiff contends that defendants did not inform him in the promotional material that the monthly payments made after acceptance of the promotion would be allocated by defendants first to reduce the cash advance balance subject to the low (promotional) APR, and not to reduce purchase balances subject to APRs that were substantially higher than the promotional rate (id., ¶ 27).
While the promotional rate was in effect, plaintiff made monthly payments that [*3]would have been sufficient to pay off his purchase balances in full, except that Chase USA allocated all of these payments to reduce the balance of the cash advance (id., ¶ 30). Plaintiff contends that, by allocating the payments in this manner, Chase USA insured that plaintiff would accrue finance charges on his purchase balances at the higher APR of 16.90% (id.).
Although plaintiff requested that his monthly payments be allocated so as to first pay down the higher rate purchase balances, Chase USA refused. It mailed him a letter advising that it was Chase USA's policy to allocate the entirety of all cardholders' monthly payments first to the promotional rate balances (id.).
In March 2002, Chase USA revised the terms of the Cardmember Agreement and, together with plaintiff's monthly statement showing a payment due date of April 7, 2002, mailed an Arbitration Agreement and Change in Terms Notice (the Arbitration Agreement) to plaintiff (Farrell Aff., ¶¶ 10-11). The monthly statement included the following words:
 "IMPORTANT: PLEASE READ ENCLOSED INSERT FOR NEW ARBITRATION AGREEMENT AND OTHER CHANGES TO YOUR ACCOUNT TERMS" (id., Exh 5). The Arbitration Agreement informed plaintiff that Chase USA had revised certain aspects of the Cardmember Agreement, and that it was adopting an arbitration provision (id., Exh 4).
Specifically, the Arbitration Agreement stated that certain enumerated claims must be submitted to an arbitration panel. The Arbitration Agreement expressly provides:
ARBITRATION AGREEMENT
IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE A CLAIM IN COURT **** CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000, EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.
***

1. Binding Arbitration.
This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and enforceable under the Federal Arbitration Act ****
2. Claims Covered

Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application [*4]or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration **** Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interests, costs and fees; and (3) the only parties to the litigation will be you and us.
Id., Exh 4 at 2 (emphasis in original).
In addition to the above-referenced language, the Arbitration Agreement contained a section entitled "YOUR RIGHTS TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE," which explicitly stated that "[t]he changes described in this Notice will not become effective if you send us a written letter that you choose not to accept them" (id., Exh 4 at 11 [emphasis in original]). However, plaintiff elected not to opt out of the Arbitration Agreement, sending no opt out letter to Chase USA (id., ¶ 13).
Plaintiff filed a class action complaint against Chase USA and JPMorgan Chase. Plaintiff asserts that Chase USA and its parent JPMorgan Chase violated the General Business Law provisions regarding deceptive trade practices and false advertising by allocating the class' payments to their purchase balances, which carried a higher annual percentage rate, and charging $50 in cash advance and balance transfer fees. Plaintiff also asserts a breach of contract claim, and seeks equitable disgorgement and a constructive trust on the basis of the same alleged conduct by Chase USA and JPMorgan Chase. In the Prayer for Relief, plaintiff also seeks, inter alia, an unspecified amount of compensatory damages for himself and the class, as well as a permanent injunction "enjoining defendants from continuing to engage in the lawful conduct alleged herein," and an order "voiding all existing credit card agreements between defendants and the Class" (Complaint at 18).

DISCUSSION
Defendants contend that this action must be dismissed, because the governing Arbitration Agreement expressly precludes plaintiff from initiating or maintaining any lawsuit in this or any other judicial forum for the type of claims that plaintiff asserts. As such, defendants argue, the claims should be determined by an arbitrator.
In support of the motion to permanently stay arbitration, plaintiff advances five main arguments: First, that he did not agree to the terms of the Cardmember Agreement, and is thus not bound by it. Second, that he also is not bound by the amendment to the Cardmember Agreement, which requires arbitration, because the amendment did not lawfully add the Arbitration Agreement. Third, even if he is so bound, the Arbitration Agreement is inapplicable to the within claim. Fourth, that Chase USA is improperly attempting to apply the Arbitration Agreement retroactively. Fifth, that the Arbitration Agreement is unconscionable because, inter alia, it was presented on a "take it or leave it" basis, it was "buried" in his monthly statement, and it requires him to pay a "prohibitive cost" to arbitrate.
The Arbitration Agreement states that it "is made pursuant to a transaction [*5]involving interstate commerce, and shall be governed by and enforceable under the Federal Arbitration Act" (Farrell Aff., Exh 4 at 2). The FAA mandates that agreements to arbitrate must be enforced on the same basis as other contracts (see 9 USC § 2; Dean Witter Reynolds, Inc. v Byrd, 470 US 213 [1985]; Bell v Cendant Corp., 293 F3d 563 [2d Cir 2002]). "Because an agreement to arbitrate is a creature of contract, however, the ultimate question of whether the parties agreed to arbitrate is determined by state law" (Bell v Cendant Corp., supra, 293 F3d at 566).
Most importantly, the United States Supreme Court has recently held that class action arbitrations are permissible under the FAA, if not prohibited by the applicable arbitration agreement (Green Tree Financial Corp. v Bazzle, ___ US ___, 123 S Ct 2402, 2408, 156 L Ed 2d 414 [2003] [Stephens, J., concurring] ["decision to conduct a class-action arbitration was correct as a matter of law"]).
Courts have recognized a "strong federal policy favoring arbitration as an alternative means of dispute resolution" (Oldroyd v Elmira Sav. Bank, FSB, 134 F3d 72, 76 [2d Cir 1998]). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (Moses H. Cone Mem. Hosp. v Mercury Constr. Corp., 460 US 1, 24-25 [1983]; see also League of American Theatres & Producers, Inc. v Cohen, 270 AD2d 43 [1st Dept 2000]). The factors that must be considered in determining whether to compel arbitration, pursuant to the FAA, include whether the parties agreed to arbitrate, and the scope of the arbitration agreement (see Norcom Electronics Corp. v CIM USA, Inc., 104 F Supp 2d 198 [SD NY 2000]). In addition, CPLR 7503 (a) directs that "[w]here there is no substantial question whether a valid agreement was made or complied with *** the court shall direct the parties to arbitrate."
Pursuant to CPLR 3211(a)(1), a court may dismiss a complaint based on a defense founded on documentary evidence where the proffered evidence disposes of plaintiff's claims as a matter of law (Leon v Martinez, 84 NY2d 83 [1994]; Bronxville Knolls, Inc. v Webster Town Center Partnership, 221 AD2d 248 [1st Dept 1995]; Talbi v ZCWK Assocs., 179 AD2d 475 [1st Dept 1992]). Here, the complaint must be dismissed as a matter of law because this action is specifically barred by the plain and unambiguous terms of the Arbitration Agreement entered into by the parties. Although plaintiff sets forth a number of arguments in opposition to the motion, and in support of his cross motion to permanently stay arbitration, none has any merit.
The Arbitration Agreement expressly forbids the litigation of claims if: (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000; and (3) the only parties to the litigation will be the cardmember and Chase USA (Farrell Aff., Exh 4 at 2). The instant dispute is in direct contravention of all three preclusions because: (1) plaintiff seeks equitable relief, including a permanent injunction, equitable disgorgement, constructive trust, and an order voiding of all existing credit card agreements between defendants and the class (see Complaint at 18); (2)plaintiff seeks an undetermined sum of compensatory damages on behalf of the putative class (id.); and (3) plaintiff seeks to represent a class [FN2]. Thus, plaintiff may not maintain the instant [*6]cause of action in this forum.
The foundation of plaintiff's opposition is his contention that he is not bound by the Cardmember Agreement, because he never agreed to it. However, among the claims asserted by plaintiff is one for breach of contract. The contract referred to is the Cardmember Agreement with Chase USA, and in support of this alleged breach, plaintiff makes numerous references to the Cardmember Agreement (see id., ¶¶ 53-59).
In addition, despite acknowledging that he has used his Chase USA credit card since 1991 (id., ¶ 7), plaintiff asserts that he did not "affirmatively approve or consent to the terms" of the Cardmember Agreement (Johnson Aff., ¶ 9). This argument completely lacks merit. First, plaintiff's Chase USA credit card states, above plaintiff's signature, that "[u]se of this card is governed by the Cardmember Agreement" (Farrell Aff., ¶ 5). Second, whether or not plaintiff indicated his assent to the terms of the Cardmember Agreement, his use of the card for 12 years after receiving the Agreement provides more than sufficient evidence of his consent to its terms. In Brower v Gateway 2000, Inc., (246 AD2d 246 (1st Dept 1998]) the court stated:

[t]hat a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract any more than such claim would undo a contract formed under other circumstances.
Id. at 252 [citation omitted]; see also Hale v First USA Bank, N.A., 2001 WL 687371 at *1 [SD NY 2001] ["plaintiff does not dispute that she used her credit card and Account and thus accepted the Agreement"]). Thus, plaintiff is bound by the Cardmember Agreement.
Next, plaintiff contends that he is not bound by the amendment to the Cardmember Agreement; because it did not lawfully add an agreement to arbitrate. Conversely, defendants contend that Delaware statutory law, which applies to this action, expressly approves the method of giving notice of an amendment to include an arbitration provision, that was employed here.
Although plaintiff contends otherwise, Delaware law is clearly applicable. The Cardmember Agreement explicitly provides that:

Law that Applies. The laws of the United States of America and the State of Delaware apply to this Agreement and to your use of Your Card, Your Checks and Your Account.
The contractual choice of law provisions will be enforced (see Marine Midland Bank, N.A. v United Missouri Bank, N.A., 223 AD2d 119 [1st Dept], lv dismissed 88 NY2d 1017 [1996]; Koob v IDS Fin. Servs., Inc., 213 AD2d 26 [1st Dept 1995]).
Section 956 of the Delaware Code provides that "[a] revolving credit plan [*7]between a bank and an individual borrower shall be governed by the laws of this State." Under
§ 941's definition, Chase USA is considered a "bank" under the statute. Thus, Delaware law is applicable, and, as set forth below, it provides the statutory framework as to the adequacy of the notice to plaintiff of the arbitration provision at issue.
As a general rule, Delaware law permits credit card agreements to be unilaterally amended, as was done here (see Edelist v MBNA America Bank, 790 A2d 1249 [Del 2001]). In order to amend credit card agreements under Delaware law, banks are required to follow certain procedures. These procedures provide for a notice to the cardholder of the proposed amendment, and the opportunity to "opt out" by sending notice to the bank of the rejection of the amendment. Thus, § 952 (a) of Title 5 of the Delaware Code, entitled "Amendment of agreement," provides:

Unless the agreement governing a revolving credit plan otherwise provides a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to *** arbitration or other alternative dispute resolution mechanisms, or other matters of any kind whatsoever.
Del Code § 952 (a).
Section 952 (b) (2) further provides that such amendment will become effective "as to a particular borrower if the borrower does not, within fifteen days of the earlier of the mailing or delivery of the written notice of the amendment *** furnish written notice that the borrower does not agree to accept such amendment." In addition, the statute provides that, even if the borrower has objected to the amendment, if after 15 days from mailing of the notice of amendment, the borrower "uses a plan by making a purchase or obtaining a loan *** the amendment may be deemed *** to have been accepted *** as to the borrower." It is undisputed that plaintiff did not give Chase USA notice that he did not agree to the amendment.
The argument that the amendment did not become effective since plaintiff did not sign it, is also rejected. The original Cardmember Agreement provides that plaintiff can give his consent to the amendment by electing to use his account after the effective date of the amendment (id. See also Del Code § 952 [b]). Plaintiff continued using the card after the effective date of the amendment, May 1, 2002, as evidenced from his account statements (see Farrell Aff., Exh 3). Thus, proof that plaintiff manifested his assent to the Arbitration Agreement can be found, not only in his admitted election not to opt out, but also in his continued used of his card (see Grasso v First USA Bank, 713 A2d 304 [Del 1998]; Whalen v American Express [Sup Ct, NY County, July 8, 2002, Index No. 602754/01, Ramos, J.]).
Courts have routinely upheld Delaware's statutory scheme of permitting banks to unilaterally amend Cardmember Agreements to add arbitration agreements, where, as here, the [*8]cardholder is given notice of the amendment, and the agreement is subject to an "opt out" provision, that permits the cardholder the choice of whether to accept or reject the amendment (Edelist v MBNA America Bank, 790 A2d 1249, supra; Pick v Discovery Financial Services, Inc., 2001 WL 1180278 [D Del 2001]; Joseph v MBNA America Bank, N.A., 148 Ohio App 3d 660, 775 NE2d 550 [2002]). Plaintiff relies on inapposite cases from California, New Jersey and Florida, which are not relevant here, and which in any event are distinguishable on their facts. Thus, Badie v Bank of America (67 Cal App 4th 779 [1998]); Powertel, Inc. v Bexley (743 So 2d 570 [Fl 1999], review denied 763 So2d 1044 [FL 2000]); Discover Bank v Shea (NJ Super, October 26, 2002, Docket No. L-1183-01]); and Ting v AT&T (182 F Supp 2d 902 [ND Cal 2002], affd in part, reversed in part 319 F3d 1126 [9th Cir], cert denied ___ US ___, 2003 WL 1988529 [2003]) are based upon a determination that: (1) the credit card issuer's conduct was unconscionable because it communicated the amendment in a way designed not to be noticed by the consumer; and /or (2) the arbitration agreement was presented on a "take it or leave it" basis.
While plaintiff alleges that the Arbitration Agreement was "buried" in his monthly statement, or that it was sent in a "secretive" or "covert" manner, the facts show otherwise. It was included with the March 2002 monthly billing statement (Farrell Aff., ¶ 11). The amendment included a heading on the front in bold large type "ARBITRATION AGREEMENT AND CHANGE IN TERMS NOTICE" and the first paragraph of the Arbitration Agreement is again printed all in bold, capitalized type. Such notification cannot be characterized as "secret" or "covert." Moreover, Chase USA printed a notice in all caps on the face of the March 2002 statement, thus providing a second notification of the new arbitration provision.
Finally, the concerns of the courts in Powertel, Shea, and Ting that consumers were provided with no real choice but to accept the arbitration provisions because the alternative was to terminate their services with the defendant, is again not relevant in the present case. Here, plaintiff's Arbitration Agreement alerts plaintiff in the first paragraph that he can "opt out" and later explains in greater detail that plaintiff can opt out of arbitration and continue using his Chase USA credit card without being required to arbitrate disputes. Specifically, under a bold, large type, capitalized heading titled: "YOUR RIGHT TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE," the Arbitration Agreement provides "[i]f the only choice you make is not to accept the Arbitration Agreement section, your account will remain open" (Farrell Aff., Exh 4 at 11). In any event, in this day and age when credit cards are rather easily available from any of a number of issuers, the fact that the customer who elected not to accept the Arbitration Agreement would have to terminate his/her account, would not be grounds for concern.
In addition, even under the Arbitration Agreement, plaintiff could have elected to sue defendants in an individual action, for money damages. Instead, plaintiff elected to bring an action on behalf of "hundreds of thousands of persons" and to seek injunctive relief (Complaint, ¶¶ 13, 17).
Plaintiff next argues that the section of the original Cardmember Agreement concerning amendments merely provides that Chase USA can "change" existing terms but not "add" new terms. He again relies on the California court's decision in Badie v Bank of America, [*9]67 Cal App 4th 779, supra. In Badie, the court drew a distinction between a clause in the plaintiff's agreement providing for a "change" of terms, and clauses in other agreements either using the word "amend," or which specifically state that terms could be added.
Unlike the agreement in Badie, however, the original Cardmember Agreement expressly allows Chase USA to "amend" terms (Farrell Aff., Exh 2 at 9). Moreover, the "Amendments to This Agreement" section of the Cardmember Agreement was modified in 1999 to expressly provide that its terms could be changed "by adding new terms" (Farrell Reply Aff., Exh 2; see Fields v Howe, 2002 WL 18011 at *4 [SD IN 2002]).
 Plaintiff further argues that § 952 of the Delaware Code is inapplicable because it applies only to "outstanding indebtedness" and plaintiff had no indebtedness at the time the amendment was instituted (Pl Mem at 15). Plaintiff, however, quotes only the part of the statute that supports his argument. The entire sentence reads:

[u]nless the agreement governing a revolving credit plan otherwise expressly provides, any amendment may, on or after the date upon which it becomes effective as to a particular borrower, be applied to all then outstanding unpaid indebtedness in the borrower's account under the plan, including any such indebtedness that arose prior to the effective date of the amendment.
Del Code Ann tit 5 § 952 (a) (emphasis added).
The Arbitration Agreement expressly provides that the term "'Claims' includes claims that arose in the past or arise in the present or the future" (Farrell Aff., Exh 4 at 3). Accordingly, it is clear that § 952 applies.
Plaintiff also contends that because his claims arose prior to the May 2, 2002 effective date of the Arbitration Agreement, it cannot be applied "retroactively." For the reasons set forth above, this argument also fails (see also, Williams v Dillon & Co., Inc., 243 AD2d 559, 560 [2d Dept 1997]; Clark v Kidder, Peabody & Co., 636 F Supp 195, 197 [SD NY 1986]; Lloyd v MBNA America Bank, N.A., 2001 WL 194300 at *4 [D Del 2001], affd 2002 WL 21932 [3d Cir 2002]).
Plaintiff also asserts that he should not be bound by the Arbitration Agreement because it is "unconscionable." He contends that the Arbitration Agreement is a contract of adhesion presented on a "take it or leave it" basis, and that it requires him to pay "prohibitive costs" to arbitrate. The allegations, however, bear no relation to the facts. The Arbitration Agreement was not presented on a "take it or leave it" basis. It permits plaintiff the opportunity to opt out of arbitration, and to still continue using his Chase USA credit card without the requirement that "any claim or dispute" be arbitrated. The claim of unconscionability is unavailing (see Ranieri v Bell Atlantic Mobile, 304 AD2d 353, 354 [1st Dept 2003] ["[i]t does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider"]).
In addition, the Arbitration Agreement provides that, at plaintiff's request, Chase USA will advance reasonable arbitration fees that he is required to pay to pursue a claim in arbitration up to $500 (Farrell Aff., Exh 4 at 6). The Arbitration Agreement provides for arbitration in one of three nationally organized forums selected by plaintiff (id. at 4). It also [*10]provides that Chase will reimburse plaintiff for the initial fee if he already paid it, and if he prevails on his claim (id. at 5, 6). If there is a hearing, Chase USA agrees that it will pay any fees of the arbitrator and the arbitration administrator for the first two days of the hearing (id.). Moreover, if plaintiff still finds arbitration costs to be excessive, the Arbitration Agreement allows him to pursue recovery individually by bringing a lawsuit if his claim is for money damages in an amount not in excess of $25,000 (id. at 2). Plaintiff acknowledges that his claim is for less than $25,000 (Pl Mem at 24). Accordingly, there is no evidence that the cost of arbitration will be prohibitively expensive (see Lloyd v MBNA America Bank, N.A., 27 Fed Appx 82, supra [arbitration provision not unconscionable where credit card issuer agreed to advance arbitration costs, if requested]).
Finally, plaintiff contends that the Arbitration Agreement violates the New York Retail Installment Sales Act (RISA), as codified in Personal Property Law (PPL) § 401 et seq. Specifically, plaintiff asserts that the PPL § 413 (10) (f) expressly voids a provision in a retail installment credit agreement by which the retail buyer waives any right to a trial by jury in any proceeding arising out of the agreement. However, the FAA preempts state law to the extent that it conflicts with the FAA. Here, the Arbitration Agreement expressly provides that it is governed by and enforceable under the FAA. It is well settled that a state statute is preempted to the extent it conflicts with the FAA (Gerling Global Reinsurance Corp. v Home Ins. Co., 302 AD2d 118, 125 [1st Dept 2002], lv denied 99 NYS2d 511 [2003]; Doctors Assocs., Inc. v Casarotto, 517 US 681, 688 [1996]).
Further, RISA does not apply to the instant dispute. PPL § 401 (8) explicitly states that a "retail installment credit agreement" must be "entered into in this state." However, the Cardmember Agreement was entered into in Delaware, the only state in which Chase USA is located. Chase USA apparently extends credit solely from Delaware, and not from the state where a cardholder resides or uses the card to make a purchase (see Marquette Natl. Bank of Minneapolis v First of Omaha Svc. Corp., 439 US 299 [1978]).
The controversy between these parties falls squarely within the scope of the Arbitration Agreement, and is the type of claim the parties agreed to arbitrate. Therefore, the Arbitration Agreement requires plaintiff to arbitrate the claims, and precludes this action (Berger v Cantor Fitzgerald Sec., 967 F Supp 95, 96 [SD NY 1997]). The court notes that in the proper circumstances, which may exist here, the arbitration proceeding could be brought, and take place, on behalf of a class, similar in many respects, to a class action in this court (see, Green Tree Financial Corp. v Bazzle, ___ US ___, 123 S Ct 2402, 156 L Ed 2d 414 [2003], supra).
Defendants' motion to dismiss is granted. The parties are directed to proceed to arbitration. In light of this determination, defendants' motion to dismiss the complaint as to defendant JPMorgan Chase for failure to state a cause of action is denied as moot.
Accordingly, it is
ORDERED that defendants' motion to dismiss the complaint is granted; and it is further
ORDERED that defendant's motion to dismiss the complaint as pleaded against defendant JPMorgan Chase for failure to state a claim is denied as moot; and it is further
ORDERED that plaintiff's cross motion to permanently stay arbitration is denied; and it is further
[*11]
ORDERED that the parties are directed to proceed to arbitration in compliance with the procedures set forth in the Arbitration Agreement, and to serve a copy of this Decision and Order upon the appropriate arbitral tribunal; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
This constitutes the order and judgment of this Court.
Dated: February 27, 2004
ENTER:
________/S/_______________
 J.S.C.
Decision Date: February 27, 2004
Footnotes

Footnote 1: The undersigned is the holder of a credit card issued by Chase USA, but has not borrowed money on cash advances through the credit card. Therefore, he is not a member of the putative class.

Footnote 2:Although plaintiff half-heartedly contends that the instant action is a "not-yet-certified class action" and therefore, meets the requirement that the suit be maintained only between the individual cardholder and Chase USA, the Court rejects this argument. It is clear that plaintiff only intended to bring this action as a class action. The complaint is entitled "Class Action Complaint," and is rife with "class action" allegations (see Complaint, ¶¶ 11-19).